UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MATTHEW HEALY ) | |
| ) | |
| Mr. Healy, ) | |
| ) | |
| vs. ) | Cause No.: 1:11-cv-01184-WTL-DML |
| ) | |
| NATIONAL BOARD OF ) | |
| OSTEOPATHIC MEDICAL ) | |
| EXAMINERS, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S PRE-TRIAL BRIEF**

**I.   Introduction**

Matthew Healy has filed suit against the NBOME under Title III of the ADA, 42 USC § 12189.  Title III provides that, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation," 42 U.S.C. § 12182(a), and that "any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations . . . in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals," 42 U.S.C. § 12189.  28 CFR 36.102-36.104.

There is no dispute that NBOME falls within the provisions of Title III.  Additionally, there is no dispute that Mr. Healy requested accommodations and that his requests were denied by NBOME.  Therefore, the issues before the Court in this case are (1) whether or not Matthew

111227 / 1615641-1

Healy is a person with disabilities under the ADA and (2) if he is determined by the Court to be disabled under the ADA, whether the requested accommodations are reasonable.

## II.     The Purpose and Mission of NBOME

The National Board of Osteopathic Medical Examiners, Inc. (the "NBOME") is a nonprofit corporation, organized under the laws of the state of Indiana, dedicated to serving state licensing agencies and the public by administering examinations testing the medical knowledge of those who seek to serve the public as osteopathic physicians. NBOME's mission is to protect the public by providing the means to assess competencies for osteopathic medicine and related health care professions. The NBOME's Comprehensive Osteopathic Medical Licensing Examination ("COMLEX-USA") is the examination series universally accepted for osteopathic physician licensure in the United States, and also is recognized by physician licensing authorities in numerous other international jurisdictions.  In addition, a diverse, highly qualified and dedicated national faculty supports the NBOME's mission of protecting the public. NBOME's national faculty includes several hundred professionals from every region of the country who have expertise in the health professions, osteopathic medical practice, medical education and evaluation, and physician licensure and regulation.

The NBOME, at all times, seeks to better serve the public by endeavoring to adhere to the spirit and the letter of the Americans with Disabilities Act (the "ADA") and the ADA Amendments Act (the "ADAAA").  Mr. Healy states in his brief that the NBOME does not share the goals of the ADA.  On the contrary, it is because of the NBOME's desire to adhere to the goals of the ADA and to protect the public that the NBOME had denied Mr. Healy's request for accommodations on the COMLEX-USA Level 1 examination.  The documentation provided by Mr. Healy does not support his need for accommodations.  Indeed, an inaccurate or inappropriate

provision for accommodations could negatively affect not only other applicants to the exam, but, more importantly, the public.

### III. Matthew Healy is not a Person with a Disability under the ADA

#### A. Disability as defined under the ADA

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(A). In order to establish a disability under the ADA Plaintiff must prove that he has a physical or mental impairment that substantially limits a major life activity as compared to the average person in the general population. 29 C.F.R. 1630.2(j)(1)(ii). The evidence at trial will show that Plaintiff is unable to establish the prima facie case of a person with disabilities under the ADA.

#### B. Mr. Healy has no physical or mental impairment that substantially limits a major life activity as compared to the average person in the general population.

The Test Accommodations Committee ("TAC") of the NBOME considered the facts relevant to Mr. Healy's request for accommodation, including the opinion of two independent experts, Dr. Bernier and Dr. Murphy, both of whom will be testifying by deposition at trial. Both doctors carefully reviewed Mr. Healy's case and both doctors came to the same conclusion, namely, that Mr. Healy is not a disabled person under the ADA. The NBOME submits that the Court will find these experts' views to be persuasive on these issues.

##### 1. Dr. Bernier

Joseph Bernier, Ph.D., a psychologist with over 30 years of clinical general psychology practice experience and with a specialty in neuropsychological assessments, found that the objective documentation submitted for his review did not reflect a substantial limitation in reading that would prevent Mr. Healy from taking the osteopathic medical licensing examination

under standardized conditions.  First, Dr. Bernier said that learning disabilities such as a reading disorder and disorder of written expression are chronic lifelong conditions, and there was no objective history of any learning disabilities during the early years of childhood when generally recognized.  Additionally, there was no evidence of functional disability from competency examinations, standardized tests and college entrance exams (SAT and ACT) where he measured in the above-average range.

In adulthood, Mr. Healy was evaluated by Dr. Baten as a result of seeking accommodations in college and then later in medical school.  Dr. Bernier indicated that the neuropsychological testing conducted in 2002 and 2006 by Dr. Baten failed to demonstrate substantial impairment in reading, reading comprehension, or the degree of reading proficiency needed to perform a timed multiple-choice examination.  In fact, the results indicated that Mr. Healy performed within the average and above average range as compared to most people in the general population on most diagnostic and placement tests.

Dr. Bernier summarized his opinion as follows:

"[u]pon review of the [relevant documents], I am of the opinion that *if* Mr. Healy is a disabled individual, above and beyond being labeled as such because he carries a clinical diagnosis or experiences difficulty in the most demanding or competitive of academic circumstances, then this has not been well established in the documentation that has been made available to review to date.  [Inasmuch] as the professionals who have evaluated or treated Mr. Healy offer opinions that often appear to me to be inconsistent, poorly documented/substantiated by fact or examples, and, in some instances, seem to derive from faulty assessment and reporting methods, there is ample reason to question the nature and severity of the alleged disability.  But, perhaps, most importantly, the history of performance on standardized tests in aggregate conclusively fails to establish that accommodations are necessary for Mr. Healy to access written examination.  In consideration of the entirety of the documentation I reviewed, I remain unable to support Mr. Healy's request for accommodations."

      **2.**      **Dr. Murphy**

Kevin Murphy, Ph.D., a psychologist with over 15 years of clinical psychology practice experience and specialty in ADHD, determined that the documentation failed to indicate ADHD or any disabling impairment. Dr. Murphy advised that ADHD is a developmental disability with a childhood onset that would not suddenly appear later in life. He believed that Mr. Healy provided no historical documentation indicating evidence of problems with attention, concentration, impulsivity, disorganization, distractibility, executive functioning, or self control over the course of his childhood, adolescence, or adult life. There was no documentation that his grades were poor and/or inconsistent or that he suffered any kind of academic, social, or behavioral deviance compared to same-aged peers.

Further, Dr. Murphy points out that as part of the neuropsychological tests, Dr. Baten had Mr. Healy complete an ADHD questionnaire in 2002 and Mr. Healy and his mother each completed a questionnaire in 2006. In 2002 and 2006, the scores from the questionnaires completed by Mr. Healy were "well below the cutoff score for symptoms of ADHD". Additionally, the questionnaire completed by Mr. Healy's mother also did not endorse items consistent with a diagnosis of ADHD. Dr. Brewer, who saw Mr. Healy only three months after Dr. Baten in 2006, also had Mr. Healy complete a questionnaire for ADHD which also did not endorse symptoms consistent with a diagnosis of ADHD. Yet, based merely on self report (which was inconsistent with the only documentation contained in Dr. Brewer's file) and without validating any of the information by review of historical documentation or conducting further testing, Dr. Brewer diagnosed Mr. Healy with ADHD and prescribed medication. In summary, Dr. Murphy found that there was no evidence of any functional impairment in any major life activity relative to the average person.

### C. Reasonableness of the Requested Accommodation

Mr. Healy has requested double time and a separate private room in order to take the COMLEX-USA Level 1 examination. The purpose of the accommodations is not to facilitate success or optimize one's test scores. A "reasonable accommodation" is one that gives the otherwise qualified Mr. Healy with disabilities "meaningful access" to the program or services sought. Henrietta, 331 F.3d at 282 (citing Alexander v. Choate, 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)). Mr. Healy has the burden to prove that a particular accommodation is necessary to provide him access to the examination. *See, e.g., Argenyi v. Creighton University*, 2011 WL 443117 (USDC, Neb. 2011). The evidence at trial will demonstrate that Mr. Healy is unable to prove that an accommodation is necessary because there is no evidence of impairment or a lack of meaningful access to the COMLEX-USA exam.

### IV. Conclusion

The NBOME is dedicated to serving the public by administering examinations testing the medical knowledge of those who seek to serve the public as osteopathic physicians. Mr. Healy has the burden of proving that he has a physical or mental impairment that substantially limits a major life activity as compared to the average person in the general population. The evidence at trial will not support his claim.

        Respectfully submitted,

        By:   s/ Kristen M. Carroll
        Robert M. Kelso, Atty. No. 5441-49
        Kristen M. Carroll, Atty. No. 23129-49A
        KIGHTLINGER & GRAY, LLP
        151 North Delaware Street, Suite 600
        Indianapolis, IN 46204
        rkelso@k-glaw.com
        kcarroll@k-glaw.com
        (317) 638-4521
        Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of April, 2012, a copy of the foregoing was filed electronically. Notice of the filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    Andrew Dutkanych III
    Kyle F. Biesecker
    BIESECKER, DUTKANYCH & MACER, LLC
    411 Main Street
    Evansville, IN 47711
    kfb@bdlegal.com
    ad@bdlegal.com

    Sydney L. Steele
    Kevin D. Koons
    KROGER, GARDIS & REGAS, LLP
    111 Monument Circle, Suite 900
    Indianapolis, IN 46204-5125
    sls@kgrlaw.com
    kdk@kgrlaw.com

        By:   s/ Kristen M. Carroll
        Robert M. Kelso/Kristen M. Carroll

KIGHTLINGER & GRAY, LLP
151 North Delaware Street, Suite 600
Indianapolis, IN 46204
(317) 638-4521