UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MATTHEW HEALY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE: 1:11-CV-1184-WTL-DML |
| | ) |
| NATIONAL BOARD OSTEOPATHIC | ) |
| MEDICAL EXAMINERS, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S POST-TRIAL BRIEF**

**I.     Introduction**

Plaintiff, Matthew Healy, by counsel, submits this Post-Trial Brief in support of his contention that the National Board of Osteopathic Medical Examiners failed to provide him with an accommodation to take the COMLEX Level One exam in violation of the Americans with Disabilities Act of 1990 ("ADA"). Consistent with intended broad application of the ADA, Healy has presented sufficient evidence to demonstrate that he is "disabled" within the meaning of the ADA and that his requests for double time and a private setting were reasonable accommodations. As such, Mr. Healy respectfully requests that this court find that the NBOME has violated the ADA and require the NBOME to provide him with the accommodations of double time and a quiet setting for the May 23, 2012 COMLEX Level One exam.

**II. Statement of Issues**

There were two issues presented at trial for determination by the Court.

(1) Whether Mr. Healy is "disabled" as defined by the ADA?

(2) Whether the accommodations requested by Mr. Healy were reasonable?

**III. Argument**

Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*, prohibits discrimination against persons with disabilities in professional examinations such as the COMLEX-USA Level 1 exam:

> Any person that offers examinations … related to applications, licensing, certification, or credentialing for … professional, or trade purposes shall offer such examination … in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189. Furthermore, DOJ regulations provide that an exam covered by §12189, like the COMLEX-USA Level 1 exam, must be administered accurately to reflect the individual's aptitude or achievement level, rather than his impairment. 28 C.F.R. § 36.309(b)(1)(i)(2010). As such, mental impairments, like those that Healy suffers from, must be accommodated under the ADA.

In order to prevail, Healy must show: "(1) that he is disabled; (2) that [his] requests for accommodations are reasonable; and (3) that those requests have been denied." *D'Amico v. New York State Bd. Of Law Exam'rs*, 813 F. Supp. 217, 221 (W.D.N.Y. 1993). The third factor is not disputed. Because the evidence established each of the remaining elements, this Court should find that NBOME

2

failed to provide accommodations to Healy for the COMLEX-USA Level 1 test in violation of Title III of the ADA.

**A. Healy suffers from a "disability" within the meaning of the ADA.**

The Americans with Disabilities Act defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(A). The Supreme Court devised a three-part test for determining whether a plaintiff is "disabled" due to a physical or mental impairment under 42 U.S.C. § 12102(2)(A). First, the court determines whether the plaintiff suffered from a physical or mental impairment. If so, then the analysis turns on whether the major life activity claimed by plaintiff constitutes a major life activity under the ADA. Finally, the court must determine whether plaintiff's impairment substantially limited the major life activity. See *Furnish v. SVI Systems, Inc.*, 270 F.3d 445, 449 (7th Cir. 2001), citing *Bragdon v. Abbott*, 524 U.S. 624 631-39, 141 L. Ed. 2d 540, 118 S. Ct. 2196 (1998). This standard is not intended to be a demanding one, nor is it intended to require extensive analysis. Rather, according to Congress, it is intended to have a broad application. The evidence demonstrates that Healy suffers from a mental impairment that substantially limits his major life activities of learning, reading, concentrating, and thinking, and that he should be accommodated under Congress' broad application of the ADA.

    *a.*    *Healy suffers from a mental impairment*

The evidence establishes that Healy suffers from a mental impairment. Mental impairment is defined by the regulations to mean "[a]ny mental or

psychological disorder, such as an intellectual disability … organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2) (emphasis added).

The evidence demonstrates that Mr. Healy suffers from a reading disorder. One item on which Dr. Joseph Bernier and Dr. Amanda Baten agree is the clinical definition of a reading disorder. Dr. Bernier testified that it "calls for a significant discrepancy on reading skills measures/IQ measures and, it also includes that a person is reading at a level that wouldn't be expected for their educational background." [Bernier, p. 22, ln. 11 to 23]. Dr. Baten testified, "there is a statistical difference between what his IQ score is and what his achievement scores are on various tests that assess for reading speed and reading processing." [Baten, p. 15, ln. 18-22; p. 52, ln. 22-p.53, ln 1-5] The evidence demonstrates that this disparity exists with Mr. Healy.

Dr. Baten, after performing an interview, obtaining historical information and performing a battery of tests, concluded that Mr. Healy suffers from a reading disorder NOS. [Baten, p. 10-14] As discussed more thoroughly below, Dr. Baten found that Healy's "reading speed . . . is significantly lower (1st Quartile = bottom 25%) than his reading Comprehension, which is higher than 99% of his peers." [Exhibit 101-12, p. 194]. She concluded that he suffered from a learning disability, reading disorder, and anxiety disorder. [Baten, p. 10, ln. 18-22]. Specifically, she felt he had "very slow processing speed and most notably anxiety and significant

4

discrepancy between his IQ and the different achievement tests [she] gave him."
[Baten, p. 11, ln. 12-16]

Mr. Healy's impairment was recognized, even if not diagnosed, early in his childhood. At the age of four, Mr. Healy was evaluated by Joanne M. Sabin, who noted, "There is, however, almost a year's difference between receptive and expressive language skills." [Exhibit 101-01, p. 00004]. At the age of eight, Mr. Healy was evaluated by Madge Connor, who found his "[g]eneral intellectual capability in the Superior Range with significant disparity between the verbal/performance ability." [Exhibit 101-03, p. 00019]. This impairment is consistent with Dr. Baten's evaluation and diagnosis of a reading disorder in 2002.

The evidence demonstrates that Healy also suffers from an anxiety disorder. Mr. Healy was diagnosed with an anxiety disorder by both Dr. Baten and Dr. Brewer. Relying on the Beck's Anxiety Inventory, the Beck's Depression Inventory, and her clinical interview, Dr. Baten found that Mr. Healy had high levels of anxiety in approaching his work and, while observing him in both evaluations, "he had halting speech, raise in body temperature, sweating, shaking, having difficulty retrieving words . . . ." Based on these physical and visceral symptoms, she concluded that Healy suffered from an anxiety disorder.

Dr. Brewer also diagnosed Healy with an Anxiety disorder. Dr. Brewer assessed Mr. Healy in the area of a social phobia which has to do with fear of social or performance situations whereby he may be subject to evaluation, criticism, embarrassment, and a difficulty of escaping from that circumstance which,

5

therefore, caused him some impairment. [Brewer, p. 8, 14-15] Specifically, Dr. Brewer testified that Mr. Healy's disorder impairs Mr. Healy's thinking, reasoning and judgment. [Brewer, p. 16] He also believes that it impairs his ability to read and retain information in the timed test-taking situation. [Brewer, p. 16-17]

Over time, Dr. Brewer concluded that Healy also suffered from the inattentive type of ADHD described in the DSM manual. [Brewer, p. 14] Using the Diagnostic and Statistical Manual as a guide, Dr. Brewer believed that Mr. Healy suffered from cognitive symptoms related to attention, failure to listen with detail, and difficulty listening with retention of the information being transmitted. [Brewer, p. 13-14] Dr. Brewer believed that Mr. Healy demonstrated difficulty in organization and prioritization, planning, and executing tasks. [Brewer, p.14] Again, Mr. Healy's A.D.D related to difficulties with reading retention. [Brewer, p. 17]

There is sufficient evidence to support a finding that Mr. Healy suffers from a mental impairment. The evidence demonstrated that he suffers from a reading disorder, an anxiety disorder, and ADHD. These conditions clearly fall under the rubric of mental impairment. *See, e.g., Bartlett v. New York State Bd. Of Law Exam'rs*, 226 F.3d 69, 74-75 (2d Cir. 2000); *Bartlett v. New York State Bd. Of Law Exam'rs*, No. 93-4986, 2001 WL 930792 (S.D.N.Y. Aug. 2001); *Price v. National Bd. of Medical Examiners*, 966 F. Supp. 419, 424 (S.D.W.V. 1997). As such, the evidence satisfies the first part of the test.

b.   *Healy's mental impairment affects a major life activity.*

Healy is claiming that his impairment affects his ability to learn, read, think and concentrate. The ADA does not define "major life activities" but does provide a non-exhaustive list of major life activities that includes learning, reading, thinking and concentrating.  42 U.S.C. § 12102(2)(A).  As such, the "major life activit[ies]" that Healy is claiming to be affected by his impairment are recognized as such by the ADA.  As such, Mr. Healy satisfies this part of the test.

c.   *Healy is substantially limited in a major life activity as a result of his mental impairment.*

Mr. Healy's ability to learn, read, think and concentrate are "substantially limited" as a result of his disorders. Under the amendments to the ADA, the courts have been instructed that the term "substantially limits" is not intended to be subject to a demanding standard, nor should it demand extensive analysis. See 42 U.S.C. 120101(4) and (5).  Rather, the Court is required to interpret the definition of disability broadly, to the maximum extent permitted by the terms of the ADA.  42 U.S.C. 12102(4)(A).

To have a disability under the ADA, an individual must be substantially limited in performing a major life activity as compared to most people in the general population.  Under regulations passed for Title I of the ADAAA[1], "the comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis." 29 C.F.R. § 1630.2(j)(1)(v). An

---

[1] Though these regulations only apply to Title I of the ADA, these regulations reflect Congress' intent that the ADAAA have broad overall coverage.

impairment need not prevent, or significantly or severely restrict, the individual in performing a major life activity to be considered "substantially limiting." 74 Fed. Reg. 48440 (2009). The reference to the "average person" does not "imply a precise mathematical 'average.'" 29 C.F.R. pt. 1630 app. § 1630.2(j). "Substantially limits" is to be given a broad reading and is not meant to be a demanding standard. CONG. REC. S8841 (daily ed. Sept. 16, 2008) (Statement of Managers); *see* 154 CONG. REC. H8288 (daily ed. Sept. 17, 2008) (statement of Rep. Miller) ("We expect the courts and agencies to apply this less demanding standard when interpreting 'substantially limits.'").

    Here, there was sufficient evidence to support a finding that Mr. Healy's ability to learn, read, think, and concentrate are substantially limited by his impairments. Mr. Healy testified that he was unable to complete his three SAT exams. He also testified that he found that he was always the last to complete exams and assignments when in middle school and high school. He described that he devoted additional time to completing assignments in order to complete them in an acceptable manner. As noted, due to his figure skating career, he received informal accommodations throughout his primary and secondary schooling that allowed him to continue work at his own methodical pace.

    Before ever seeking an accommodation, Mr. Healy wrote about the limitations that his impairment placed on him in a college essay. He identified the difficulty that he had sequencing his thoughts as a child and now. Nancy Healy, his mother, testified to his difficulty sequencing his numbers as a child as well. In his

8

essay, Mr. Healy noted, "I am able to process thoughts faster than I am able to communicate them. When trying to communicate the original thoughts, I am processing new ones, constantly rethinking what I am saying." [Exhibit.101-12, p. 000187] He also discussed his ongoing difficulty with organizing his thoughts logically. [Id.]. This essay offers a rare and reliable window into how Mr. Healy saw his condition outside and independent from his future requests for an accommodation. This evidence suggests that Mr. Healy is substantially limited by his impairment.

Dr. Baten's evaluations also found that Mr. Healy's ability to learn, read, think, and concentrate were substantially limited by his impairment. With respect to his attention/concentration, Dr. Baten found that his auditory attention falls in the low average. [Exhibit 101-12, p. 193] She found that his ability to visually scan and match different symbols is relatively low and falls in the below average range. [Exhibit 101-12, p. 193] He also scored low average on the Digit Symbol coding subtest of the WAIS-III, a speeded written substitution task. [Exhibit 101-12, p. 193] His sustained alphanumeric sequencing as assessed with an auditory letter/number sequencing task was also low average. [Exhibit 101-12, p. 193]

More critically, Dr. Baten reviewed Mr. Healy from an Academic Standpoint and reasoned:

> "Matthew presents a diverse set of skills on different aspects of reading. He performed much better on tasks that assessed his capability to read sentences and paragraphs and answer questions about what was read (Reading Comprehension = 138), than on tasks that required him to correctly read a series of printed words (Word Reading = 120) and correctly apply phonetic decoding rules when

9

> reading a series of nonsense words (pseudoword Decoding = 118). For this reason, the Reading Composite standard score (136) may not be the most accurate manner in which to summarize his reading skills. His Reading Speed, however, is significantly lower (1st quartile = bottom 25%) than his Reading Comprehension, which is higher than approximately 99% of his peers, placing these skills in the Very Superior Range, and suggests that while he had superior ability in reading, he needs extra time to work accurately.
>
> This slowness in reading speed was also noted on the Nelson-Denny Reading Comprehension, where his score (34) was in the below average range and the 3rd%ile, as compared to second year college norms. On this test, Matthew completed 23 out of the 36 items in the allotted 20 minute time frame and answered 17 of these items correctly. With extra time (20 minutes extra or about double time), he answered items correctly and obtained a score in the Superior Range.

[Exhibit 101-12, p. 194] Dr. Baten, in her professional opinion, found that Mr. Healy's slow reading and processing was substantially limiting. [Exhibit 101-12, p. 196-197, "Summary"]

Dr. Brewer testified that Healy's anxiety and attention deficits contributed to his difficulties learning, reading, thinking and concentrating. Specifically, Dr. Brewer testified Mr. Healy's anxiety disorder impairs Mr. Healy's thinking, reasoning and judgment. [Brewer, p. 16] He also believes that it impairs his ability to read and retain information in the timed test-taking situation. [Brewer, p. 16-17] Similarly, Dr. Brewer testified that Mr. Healy's A.D.D resulted in difficulties with reading retention. [Brewer, p. 17]

To demonstrate that one is substantially limited in a major life activity by one's impairment is not a demanding standard and it should not require extensive analysis. Here, Healy has come forward with sufficient evidence that his impairments substantially limit his ability to learn, read, think and concentrate.

Having met the third part of the test, the Court should find that Mr. Healy is "disabled" as defined by the ADA.

> *d.  The ameliorative effects of mitigating measures are not to be considered in determining whether Mr. Healy's impairments substantially limit his ability to learn, read, think and concentrate.*

Additionally, "the determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as … learned behavioral or adaptive neurological modifications." 42 U.S.C. § 12102(E)(i)(IV).  In his primary and secondary education, Healy did not receive formal accommodations for his disability.  Rather, given the unique nature of his upbringing, the evidence demonstrates that Healy self-accommodated through the nature of the schools that he attended and the mandates of his involvement in figure skating.  Healy attended the Montessori school where he received one on one instruction and was able to work at his own pace.  Through middle school and high school, Healy received extra time to complete assignments, tutors and a flexible schedule, which allowed him to continue to work at his own methodical pace.

Dr. Brewer testified that Mr. Healy was able to compensate for his condition during his childhood because he is bright and was able to succeed at times without the discipline, attention to detail, and persistence that became more essential as he advanced in his studies. [Brewer p. 23, ln. 16-22]  He also compensated by working harder and longer despite the other demands of his education, whether it was in Montessori, high school, or whether it was while he was skating and had more

individualized study. [Brewer p. 24, ln. 6-13] Similarly, Dr. Baten noted Mr. Healy worked very slowly, very methodically, and developed compensatory strategies that helped him until the material became more complex. [Baten, p. 51, ln. 10-14] The impairment, in Dr. Brewer's opinion, became more noticeable when Mr. Healy went to NYU. [Brewer p. 24, ln. 6-13] Up to then, Mr. Healy had survived because of frequent one to one tutorial assistance and independent study. [Brewer, p. 30, 19-22; Exhibit 101-15, p. 000417-418]

These learned behavioral modifications allowed Healy to cope with his learning disorder and should in no way indicate that Healy is not substantially limited by the disorders – Healy should not be punished now because many years ago, he found ways to achieve despite his disability.

  e. *Evidence of past accommodations must be given considerable weight under the ADA.*

The evidence demonstrates that Healy has previously been accommodated for the same disabilities that Defendant NBOME is now denying him. An entity giving an examination covered by the ADA, like the NBOME, must assure that it gives considerable weight to documentation of past accommodations received in similar testing situations. 29 CFR 36.309(b)(1)(v). Here, the evidence demonstrates that Healy was afforded formal accommodations – double time on exams and quiet testing areas - by NYU, the Association of American Medical Colleges ("AAMC"), administrator for the MCAT, and Touro College of Osteopathic Medicine. Therefore, in addition to the evidence outlined above that supports that Mr. Healy is "disabled" as defined by the ADA, this Court should give considerable weight to

the determinations by NYU, the AAMC and TouroCom that found Healy was entitled to an accommodation for his disability in similar testing situations.

*f.    The academic success that Healy has achieved despite his disability is not a proper consideration for the court.*

The Defendant appears to argue that Healy has been far too successful to be considered "disabled" under the ADA. Defendant appears to point to Healy's high grades and above average SAT score to support that he is not in fact disabled. Yet, even before the ADA was amended, the Bartlett court found that focusing on test scores and outcomes was not appropriate in determining if a person has a disability. *See Bartlett v. New York State Board of Law Examiners*, 2001 WL 930792 (S.D. N.Y. 2001). By doing so, the reviewer ignores the consideration of manner, condition, and duration under which a person can perform a major life activity. *See Bartlett v. New York State Board of Law Examiners*, 2001 WL 930792 (S.D. N.Y. 2001).

In fact, new EEOC ADAAA regulations support Healy's position and highlight the importance of looking at condition, manner, and duration with regard to performance of a major life activity instead of considering only outcomes:

> In determining whether an individual has a disability … the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless, be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population.

29 C.F.R. § 1630.2(j)(4)(iii), 76 Fed. Reg. 58 (March 25, 2011). Such is the case with Healy. While Healy may have achieved a high level of academic success, he has

13

consistently expended greater time and effort to compensate for the limitations that his impairments place on his ability to read, concentrate and learn, whether it be through self-accommodating in his youth or formal accommodations with NYU, TouroCOM and the AAMC.

The evidence demonstrates that Healy suffers from a mental impairment that substantially limits him in one or more major life activities. As such, the Court should find that Healy suffers from a disability as that term is defined by the ADA. 42 U.S.C. § 12102(2).

### B. Healy's Requests for Accommodation are Reasonable

Having established that he is "disabled" within the meaning of the ADA, Healy must only show that his requests from NBOME for accommodations on the COMLEX-USA Level 1 examination are reasonable to prevail on his claim. Healy has requested double time for the exam and has also requested to take the exam in a quiet room. In *Scheibe v. Nat'l Bd. Of Med. Exam'rs,* 2005 U.S. Dist. LEXIS 8725 (W.D. Wis. May 10, 2005), the District Court stated that "allowing an individual extra time to complete an exam is among the modifications contemplated under the testing provision of Title III of the ADA." *Scheibe,* 2005 U.S. Dist. LEXIS 8725 (*citing* 28 C.F.R. § 36.309(b)(2)). These accommodations were recommended by Dr. Baten as a result of specific testing that demonstrated that with double time Healy's true aptitude was tested on the Nelson Denny tests. [Exhibit 101-12, p. 194] Dr. Baten's recommendations were accepted and implemented at NYU and TouroCom. Mr. Healy was also provided double time and a quiet room for the

MCAT, a standardized test like the Comlex Level One. Dr. Magen, Chair of the Test Accommodations Committee, testified that the NBOME has provided double time and a quiet setting to other applicants. Indeed, NBOME has never asserted that Healy's requested accommodations are unreasonable. Thus, the evidence demonstrates that Healy's requests for double time on the exam and a quiet room are reasonable.

**IV.    Conclusion**

The evidence demonstrates that Mr. Healy suffers from a disability under the ADA and that NBOME denied his requests for reasonable accommodations to take the COMLEX-USA Level 1 examination in violation of Title III of the ADA. The end result is that NBOME's failure to provide accommodations has deprived Mr. Healy of an equal opportunity to take and pass his medical licensing examination. NBOME failed to offer the examination in a manner that measures Mr. Healy's true aptitude as opposed to his impairment. Instead, NBOME has set an impossibly high standard for the documentation to support an individual's request for an accommodation; a standard that has been specifically rejected by Congress when it passed the amendments to the ADA. Mr. Healy respectfully requests that this court find that the NBOME has violated the ADA and require the NBOME to provide him with the accommodations of double time and a quiet setting for the May 23, 2012 COMLEX Level One exam.

Respectfully submitted,

/s/Andrew Dutkanych
Andrew Dutkanych (#23551-49)
Lauren E. Berger (#29826-19)
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, IN 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com
lberger@bdlegal.com

*Attorneys for Plaintiff, Matthew Healy*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2012, a copy of the foregoing was filed electronically. Parties may access this filing through the Court's system. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.

*Counsel for Defendant:*

Kristen M. Carroll, kcarroll@k-glaw.com
Robert M. Kelso, rkelso@k-glaw.com

Kevin Dale Koons, kdk@kgrlaw.com
Sydney L Steele, sls@kgrlaw.com

/s/Andrew Dutkanych
Andrew Dutkanych